ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| LEARN AID, LLC<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO<br><br>Recurrido<br><br>PEARSON PEM, PR INC.<br><br>Parte con Interés | KLRA202400231 | *Revisión Judicial*<br>Procedente de la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos del Departamento de Educación<br><br>Sobre:<br>Impugnación de Adjudicación de Solicitud de Propuestas<br>RFP DEPR-UAF-23-005 |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2024.

Learn Aid, LLC presentó el pasado 7 de mayo un Recurso de Revisión para que revoquemos los efectos de un Aviso de Adjudicación que emitiera el Departamento de Educación de Puerto Rico (DEPR), para el RFP Núm. DEPR-UAF-23-005, para la Planificación, Capacitación, Ejecución, Desarrollo, impresión, envío y recepción, monitoreo, escaneo, procesamiento, corrección y producción de informes sobre los resultados de la Evaluación Académica Estatal del Departamento de Educación de Puerto Rico, aquí recurrida, y una prueba de evaluación alterna para todos los estudiantes en los grados 3° a 8° y 10° en las áreas de contenido de Español, Matemáticas, Inglés como Segundo Idioma; y todos los estudiantes en los grados 4°, 8° y 10° en el área de contenido

de Ciencias, según lo requerido por el Departamento de Educación de Estados Unidos.

Junto al recurso de revisión, Learn Aid presentó una Solicitud en Auxilio de Jurisdicción y el 8 de mayo de 2024 paralizamos los efectos de la adjudicación de la subasta.

La parte con interés Pearson PEM PR, Inc., solicitó que se deje sin efecto la paralización decretada. El Gobierno de Puerto Rico, en representación del Departamento de Educación de Puerto Rico también solicitó reconsideración. Luego del análisis de rigor, el 10 de mayo dejamos sin efecto la paralización decretada mediante nuestra Resolución del pasado 8 de mayo de 2024. Habiendo comparecido estas partes, le concedimos término adicional hasta el 15 de mayo para que las partes que interesen presentaran algún escrito.

Vencido el término antes otorgado y con las comparecencias de todas las partes, procedemos a resolver la impugnación solicitada.

Por los fundamentos que exponemos, confirmamos el Aviso de Adjudicación, recurrido.

## I.

El Departamento de Educación del Gobierno de Puerto Rico recibe una cantidad considerable de fondos Federales, conforme el mandato de los Títulos I, II y III de la Ley de Educación Primaria y Secundaria ("ESSA", por sus siglas en Inglés, *Every Student Succeeds Act)[1],* los cuales brindan la oportunidad que permite cubrir el costo de la educación de miles de estudiantes bajo el nivel de pobreza federal, que en el territorio de Puerto Rico

---

[1] 20 USC. Secs. 6301-7981.

sobrepasa el ochenta por ciento del estudiantado en las escuelas que administra DEPR.

Durante el Año Fiscal 2023 y solo en fondos de Titulo I, el DEPR recibió $447,700,799 y para mantenerse recibiendo esa cantidad u otra similar anualmente, tiene que cumplir con toda exigencia del gobierno federal las cuales mayormente surgen de la Ley ESSA antes mencionada.

Las pruebas CRECE son un requisito que exige el gobierno federal bajo la antes mencionada Ley de Educación Primaria y Secundaria y crean una línea base para medir el progreso estudiantil por escuela, de forma que se puedan crear planes de mejoramiento del rendimiento de los estudiantes en el sistema. Para implementar y administrar se ordena al DEPR a contratar una empresa con un historial que permita implementar y administrar esas pruebas para así obtener los resultados antes detallados y con estos diseñar los planes futuros sobre el proceso educativo.

El 4 de diciembre de 2023, el Departamento de Educación de Puerto Rico (DEPR), publicó la solicitud de propuestas relacionadas al RFP Núm. DEPR-UAF-23-0005[2]. Esa propuesta recogía la implementación y administración de las pruebas CRECE. Dicha solicitud se publicó en el Registro Único de Subastas del Gobierno de Puerto Rico y en la página web del DEPR. El 8 de diciembre de 2024 el DEPR llevó a cabo una reunión de orientación y permitió a los interesados presentar preguntas por escrito, que fueron respondidas y publicadas dichas contestaciones a través de la página web del DEPR. La fecha límite para la entrega de propuestas conforme dicha solicitud de propuestas se mantuvo como establecida originalmente para el 29 de diciembre de 2023.

---

[2] Ver páginas 51-125 del Apéndice del Recurso de Revisión.

Como requisitos para ser elegibles, el DEPR solicitó a las partes interesadas que éstas estuvieran autorizadas para hacer negocios en Puerto Rico y tuvieran una capacidad económica adecuada. Además, debían tener experiencia en el diseño y administración de pruebas estandarizadas en escuelas públicas o privadas, a través de plataformas electrónicas. A su vez, el DE les solicitó a las entidades que presentaran evidencia que demostrara la experiencia, capacidad y alcance que poseían para ofrecer los servicios contemplados en el *Request for Proposal* (RFP)[3].

Dos (2) propuestas fueron recibidas en el Área de Correo de la Oficina de Asuntos Federales, las cuales cumplieron con la fecha y hora establecida para entrega. Dichas propuestas fueron de Pearson PEM, Puerto Rico, Inc. (en adelante Pearson) y Learn Aid LLC. (aquí recurrente). De estas fue seleccionada la propuesta presentada por Pearson PEM Puerto Rico, Inc., al recibir la mejor evaluación en términos generales, la que incluyó un 100% de puntuación en la Evaluación Técnica, dado que su experiencia previa incluye el uso de una plataforma en línea con más de 70,000 estudiantes simultáneos.

El proponente Pearson, al que se adjudicó el contrato, presentó una oferta cuyo costo para el primer año es de $14,734,506.00 y un costo total de $65,812,398.00 para los cinco años del proyecto, mientras que la propuesta de Learn Aid fue de $20,595,000.00 para el primer año y un costo total propuesto a cinco años de $99,687,500.00. Claramente la propuesta adjudicada de Pearson es mucho más económica que la de Learn Aid, aquí recurrente.

---

[3] *Íd*.

Pearson tiene un extenso historial de experiencia en todas las áreas que se requiere en el RFP. La evaluación de las propuestas permitió la conclusión de que Pearson y sus 18 años de experiencia realizando la medición en el DEPR la cualifica como excelentemente preparada para cumplir correctamente con los servicios que solicitó el DEPR a través del RFP.

Evaluadas las propuestas sometidas, el 23 de febrero de 2024, el DEPR emitió un *Aviso de Adjudicación* del RFP Núm. DEPR-UAF-23-0005, en el que informó que adjudicó el requerimiento de propuesta o *Request for Proposal* a Pearson PEM, PR, Inc[4].

Inconforme con la determinación, el 4 de marzo de 2024, Learn Aid presentó una *Solicitud de Reconsideración* ante la Oficina de Asuntos Legales del DEPR. El 18 de marzo de 2024, el Secretario Auxiliar de Asuntos Legales y Política Pública notificó su determinación de acoger la solicitud de reconsideración, para considerarla en sus méritos.

Learn Aid intentó, en etapa de reconsideración, modificar su propuesta para bajar su oferta económica, pero ello no se contemplaba en el procedimiento publicado para este RFP y por ello no se le acepto dicho intento. La propuesta final de cada parte tenía que ser la realizada el 29 de diciembre de 2023, conforme el RFP y fue totalmente improcedente de Learn Aid intentar, en etapa de reconsideración, hacer una nueva negociación, actuación que no indicó en su solicitud de Revisión Administrativa que aquí atendemos, aunque surge de su Solicitud de Reconsideración presentada ante el DEPR.[5]

---

[4] *Ver páginas 1-16 del Apéndice al Recurso de Revisión*.
[5] Ver páginas 811-849 del Apéndice al Recurso de Revisión.

La proponente agraciada, la que hemos denominado Pearson y esta, según los documentos que formaron parte de su propuesta ante el DEPR, es una corporación doméstica activa registrada en el Registro de Corporaciones del Departamento de Estado (registro número 149881) y está certificada como proveedora de servicios profesionales en el Registro Único de Proveedores de la Administración de Servicios Generales (número de proveedor 35777).

Además, Pearson, en el Apéndice 12 de su propuesta, presentó toda la información requerida para la proponente y su "ultimate parent¨ que es Pearson PLC. Allí están los estados financieros auditados de su subsidiaria local (que es la proponente) para el 2019, 2020 y 2021. También se sometieron estados financieros de Pearson PLC para los últimos tres años cerrados, auditados por un auditor independiente siguiendo estándares internacionales de auditoría.[6]

El 12 de abril de 2024, la Oficina de Asuntos Legales del DEPR informa que referirá el expediente del caso a la Oficina de Adjudicaciones, adscrita a la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos, para que se evaluara la reconsideración. El 16 de abril de 2024 la Directora de Adjudicaciones emite un Memorando Explicativo y Recomendación, por conducto de la Directora de La Oficina Central de Compras, Obligaciones y Adjudicación de Fondos y dirigido a la Secretaria del DEPR, para que se decrete No Ha Lugar la reconsideración solicitada por Learn Aid.

---

[6] Ver Propuesta de Pearson ante el DEPR y página 47 del Apéndice al Recurso de Revisión.

El 17 de abril de 2024 se denegó la reconsideración de Learn Aid y se notificó dicha denegatoria.[7] El DEPR suscribió el contrato con el proponente al que se le adjudicó la buena pro, el 25 de abril de 2024. Dicho primer contrato con DEPR, vence el 30 de junio de 2024. Dicho contrato solo está relacionado a la primera fase de este proyecto. Para las otras etapas se deberá suscribir contratos distintos.

El 7 de mayo de 2024, Learn Aid acudió ante esta instancia intermedia mediante *Recurso de Revisión Judicial* en el que señaló que el DEPR cometió los siguientes tres errores:

A) Erró y abusó de su discreción la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos en su evaluación, al no descalificar a Pearson PEM PR, Inc., en la etapa del cernimiento, por este incumplir con las claras del RPF (SIC) y no presentar los estados financieros auditados de los últimos tres (3) años fiscales cerrados de su matriz, NCS Pearson, Inc. y en cambio presentar los "Annual Reports" de Pearson PLC, no siendo esta su matriz directa y por no ser esos documentos estados financieros, sino documentos corporativos internos.

B) Erró la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos a través de su Comité Evaluador, al no descalificar a Pearson PEM PR, Inc., al este haber obtenido una puntación menor a la requerida bajo el reglón de capacidad financiera y por omitir su baja calificación de Aviso de Adjudicación, asignándole de manera caprichosa, arbitraria y mediando abuso de discreción, una puntuación obtenida por una entidad que no fue la que participó en este proceso.

C) Erró la Oficina Central de Compras, Obligaciones y Adjudicación de Fondos al permitir la consideración de documentos de entidades no autorizadas a llevar a cabo operaciones comerciales en Puerto Rico, brindándole una clara ventaja a uno solo de los proponentes, violentando así el Debido Proceso de Ley por no haber evaluado a los proponentes en igualdad de condiciones.

Junto al recurso de revisión, el Recurrente presentó una *Moción Urgente en Auxilio de Jurisdicción […]* en la que solicitó la paralización de los procedimientos al amparo de la Regla 79 del Reglamento del Tribunal de Apelaciones de Puerto Rico, 4 LPRA Ap. XXII-B, R. 79. Mediante Resolución emitida el 8 de mayo de

---

[7] Ver Páginas 894-895 del Apéndice al Recurso de Revisión.

2024, se concedió la paralización solicitada y el 10 de mayo de 2024, luego de Mociones de Reconsideración presentadas por la parte con interés y el DEPR, mediante Resolución de esa fecha, se dejó sin efecto dicha paralización.

En la Resolución del 10 de mayo de 2024, que se dejó sin efecto la paralización, indicamos que habiendo comparecido ya todas las partes, el Recurso se consideraría perfeccionado para ser resuelto el 15 de mayo de 2024, lo que aquí hacemos.

## II.

## A.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, ("LPAU"), establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor con la citada ley y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia fue dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable[8].

La Ley 38-2017, supra, es el estatuto que delimita el alcance de la revisión judicial de las decisiones administrativas ante el Tribunal de Apelaciones.  Es decir, que únicamente puede presentarse un recurso de revisión judicial ante este Tribunal cuando exista una determinación final de una agencia administrativa.

Allí se establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor con las leyes y la jurisprudencia aplicable, la revisión judicial consiste,

---

[8] *Capó Cruz v. Junta de Planificación y otros*, 204 DPR 581 (2020); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *T–JAC v. Caguas Centrum Limited*, 148 DPR 70 (1999).

esencialmente, en determinar si la actuación de la agencia fue dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable.

Las exigencias de la Ley Núm. 73-2019, según enmendada, supra, también aplican a este procedimiento. Toda notificación de adjudicación de subasta o procedimiento de requerimiento de propuestas tiene que contemplar la aplicación de esta ley.

Del mismo modo, es norma reiterada que los procedimientos y las decisiones de los organismos administrativos están cobijados por una **presunción de regularidad y corrección**. Debido a ello, la revisión judicial se limita al examen de la razonabilidad de la actuación de la agencia. Por ello, el tribunal revisor podrá intervenir con los foros administrativos cuando la decisión adoptada no está basada en evidencia sustancial, o ha errado en la aplicación de la ley, o cuando la actuación es arbitraria, irrazonable, ilegal o afecta derechos fundamentales. *Caribbean Communication v. Pol. de P.R.*, 176 DPR 978, 1006 (2009); *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009).

Conforme a ello, la norma general es que las **decisiones de las agencias administrativas** deben ser consideradas con **gran deferencia** por los tribunales apelativos, por razón de la experiencia y conocimiento especializado de éstas respecto a las facultades que se les han delegado. *JP, Plaza Santa Isabel v. Cordero Badillo,*177 DPR, a la pág. 186; *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009).

**B.**

La subasta tradicional y el requerimiento de propuestas *Request for Proposal* (RFP) son métodos mediante los cuales, el gobierno central y el municipal adquieren bienes y servicios. *PR*

*Eco Park et al. y Mun. de Yauco*, 202 DPR 525 (2019); *R&B Power v. E.L.A.,* 170 DPR 606, 621 (2007). Aunque la subasta formal es el método tradicional para regular la adquisición de bienes y servicios, se ha validado, como alternativa, la compra negociada y el mecanismo de requerimiento de propuestas o *Request for Proposal*, cuando se trata de bienes o servicios especializados que involucran aspectos altamente técnicos y complejos, o cuando existen escasos competidores cualificados. *Maranello et al. v. O.A.T.*, 186 DPR 780 (2012); *Caribbean Communications v. Pol. de P.R.*, supra, a la pág. 996 (2009); *R&B Power v E.L.A.*, *supra*, págs. 621-622.

A través de ambos mecanismos se protegen los intereses del soberano ya que, procuran conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". *PR Eco Park et al. y Mun. de Yauco*, *supra*; *Caribbean Communications v. Pol. De P.R.*, *supra*, pág. 994. Ahora bien, el Requerimiento de Propuestas es un proceso, que al igual que las subastas formales, está basado en la competencia, pero es más informal y flexible. *Caribbean Communications v. Pol. de P.R.*, *supra*, pág. 997; *R&B Power v. E.L.A.*, *supra*, pág. 621.

Este mecanismo de Requerimiento de Propuestas, alterno a la subasta formal, participa de características adjudicativas de la misma forma que la subasta tradicional. *R&B Power v. E.L.A., supra*. Una vez adjudicado el procedimiento informal la agencia tiene que **notificar a las partes su determinación por escrito, sus fundamentos y el recurso de revisión disponible.** *R&B Power v. E.L.A., supra;* véase*, además, Maranello et al. v. O.A.T.,*

*supra*; *Caribbean Communications v. Pol. de P.R.*, *supra*, pág. 998.

**III.**

En su recurso de revisión, la parte recurrente en su primer señalamiento de error cuestiona el alegado cumplimiento defectuoso de Pearson con la información financiera requerida al proponente y su compañía matriz. No tiene razón.

Pearson, en el Apéndice 12 de su propuesta, presentó toda la información requerida para la proponente y su "ultimate parent¨ que es Pearson PLC. Allí están los estados financieros auditados de su subsidiaria local (que es la proponente) para el 2019, 2020 y 2021. También se sometieron estados financieros de Pearson PLC para los últimos tres años cerrados, auditados por un auditor independiente siguiendo estándares internacionales de auditoría. Por ello el primer error no se cometió.

En el segundo error, la recurrente reclama que la puntuación por el concepto de capacidad financiera, que se le otorgó a la proponente a la que se le adjudicó la subasta, no le correspondía. Se reclama en ese error que, en ese aspecto de las finanzas, se le dio a Pearson "una puntuación obtenida por una entidad que no fue la que participó en este proceso". Este segundo error se discute en el recurso, de manera conjunta con el primero y por ello, con los mismos fundamentos que rechazamos el primero, rechazamos este segundo error que tampoco fue cometido.

La notificación del resultado seleccionado por el DEPR para este RFP fue una correcta que incluyó cada segmento que debe explicarse en este tipo de trámite de requerimiento de propuestas (*Request for Proposal* (RFP)), conforme explicamos en el derecho vigente a este tipo de mecanismo.

Como tercer error se reclama que se permitieron documentos de entidades no autorizadas a llevar a cabo operaciones comerciales en Puerto Rico. Reclaman que así se dio ventaja a uno de los proponentes y con ello se violó el debido proceso de ley. Tampoco tiene razón en ese reclamo pues ese error no se cometió.

En el Aviso para someter propuestas (RFP) que se publicó el 4 de diciembre de 2023, se detallaron los requisitos del proceso. El 8 de diciembre se llevó a cabo una orientación mediante la aplicación TEAMS a los interesados en participar en la convocatoria. También se les concedió la oportunidad de presentar preguntas por escrito, las cuales fueron publicadas en la página web del DEPR con sus respectivas respuestas.

Entre las respuestas que brindó el DEPR a las preguntas sobre la evaluación financiera de los proponentes, se aclaró que se utilizaría la información de la "empresa principal" y se aclaró además que se podían presentar y se considerarían los estados financieros del "ultimate parent" de aquellos proponentes que pertenecieran a otra compañía localizada fuera de Puerto Rico.

Con esa aclaración unido a lo que indicaba el RFP, se estableció que se tenía que someter la información financiera de la entidad que somete la propuesta  y si esa entidad era una sucursal de una compañía localizada fuera de Puerto Rico, también tenían que someterse los estados financieros auditados de los últimos tres años fiscales cerrados de la compañía matriz ("ultimate parent"). El tercer error tampoco se cometió.

Pearson sometió los estados financieros de la empresa que sometía la propuesta y también sometió un documento denominado "Anual Report" para cada uno de los últimos tres años fiscales cerrados de su compañía matriz, los que como parte

de la información financiera que recogían, contenían los estados financieros auditados requeridos para cualificar para la evaluación financiera de la proponente. Por ello y demás documentos sometidos, Pearson cumplió con someter todos los documentos financieros requeridos para ser evaluada.

La evaluación de solidez financiera fue realizada por parte de una firma externa contratada por el DEPR. Como resultado de esa evaluación se determinó que ambos proponentes contaban con la capacidad financiera requerida y que ambos cumplieron con la puntuación mínima necesaria para pasar la evaluación técnica.

El aspecto de la evaluación técnica presentada por Pearson obtuvo un 100% y ello unido a que Pearson, al que se adjudicó el contrato, presentó una oferta cuyo costo para el primer año es de $14,734,506.00 y un costo total de $65,812,398.00 para los cinco años del proyecto, mientras que la propuesta de Learn Aid fue de $20,595,000.00 para el primer año y un costo total propuesto a cinco años de $99,687,500.00, permite considerar correcta la decisión de que la propuesta se debía adjudicar a Pearson. Por ello se debe confirmar el Aviso de Adjudicación aquí impugnado.

**IV.**

Por los fundamentos que anteceden, se confirma la adjudicación del requerimiento de propuestas Núm. DEPR-UAF-23-0005 del Departamento de Educación de Puerto Rico.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones